Frost, J.
dissenting. The requisites of an affidavit to hold to bail are, that it “ should be direct and •positive, that the plaintiff’ has a subsisting cause of action; and, therefore, if it be merely by way of argument or reference *202 to books or accounts, or as the party making it believes, it will not, in general, be sufficient.” 1 Tidd Pr. 182. “ Where the plaintiff sues as executor or administrator, or as assignee of a bankrupt, it is sufficient for him, or the clerk of the testator, to swear that the defendant is indebted, (fee. as appears by books, <fec. and as he verily believes.” 1 Tidd Pr. 182. These are exceptions from obvious necessity, because a positive oath cannot be made by the plaintiff.
It is admitted that the affidavit may be made by an agent or third person. But if so made, the requirement that it should be direct and positive, is not dispensed with. In McKenzie vs. McKenzie, 1 T. R. 716, Ashurst, J. says, “ the affidavit to hold to bail must be positive, and nothing ought to be left to inference;- ” and Buller, J. “ it is absolutely necessary that the affidavit on which a defendant is held to bail, should be positive.” In Jennings vs. Martin, 3 Burr. 1447, the court held that the Act “ required a positive oath of the debt.” In Pieters vs. Luytjes, 1 B. & P. 1, it was ruled to be sufficient that the agent should swear positively to the debt, without stating his agency. In Claphamson vs. Bowman, 2 Stra. 1225, the plaintiff’s book-keeper swore that defendant was indebted to plaintiff in £3,400, for money had and received to the use of the plaintiff, “ as deponent verily believes,” and it was held insufficient. In Van Morsell vs. Julian, 1 Wils. 231, the plaintiff resided abroad, and had sent an account current, verified by his own affidavit, to his agent. The agent, re-fering to this account current and affidavit, made oath that he believed the oath of the plaintiff and'the account current were true.' The affidavit was held to be insufficient. In a similar case, reported in a note to Bland vs. Drake, 1 Chitty R. 165, Dampier, J. discharged the bail, saying “this affidavit, with the production of the documents, might have been sufficient to have induced a judge to make an order for holding the defendant to bail; but clearly without such an order, the proceeding was irregular.” In Bland vs. Drake, the affidavit was made by an agent. Holroyd,, J. says, “ swearing to’ belief merely, will not do.” It was objected to the affidavit made by a *203 third person, in Brown vs. Davis, 1 Chitty R. 161, that it did not state the connection between the deponent and the plaintiff. Best, J. held that as the allegation in the affidavit, that the defendant was indebted to the plaintiff in a certain sum, rendered the party deposing liable to an indictment for perjury, if false, it was unnecessary to describe himself as plaintiff’s agent. The affidavit must not only affirm positively the debt, but also that it is a subsisting debt. Accordingly, in an anonymous case in 1 Wils. 121, a third person made affidavit of the defendant’s indebtedness, i£as appeared by an account stated under defendant’s own hand;” it was ruled to be insufficient, with the remark, “ the account may be discharged, for any thing this person knows.” For the same reason, in Rollin vs. Mills, 1 Wils. 279, the affidavit was held to be insufficient, which added, “as appears by the said bill.” A distinction is taken in affidavits made by third persons, depending on the circumstance, whether the plaintiff is in the jurisdiction or abroad. In Munro vs. Spinks, 8 T. R. 284, the plaintiff was abroad, and the deponent stated his belief that a tender in bank notes, required by an Act of Geo. 3d. had not been made; while in Cass vs. Levy, 8 T. R. 520, the plaintiff was in England, and the same statement was made; in the former case it was held sufficient, in the latter not.
In Peck & Hood vs. Van Evour, 1 N. & McC. 580, Johnson, J. considers the certainty required in the affidavit as a security to the citizen against unjust arrest, by subjecting the deponent to an indictment for perjury if it be false. In the Treasurers vs. Barksdale, the affidavit stated that the defendant had acknowledged and renewed the original note, which deponent, who was the attorney of the plaintiff, held for him; and that the renewed note had never been out of his possession; and that no payment had been made to him, and he believed none had been made to the plaintiff. Here was a positive affirmation of a debt, and the strongest possible presumptive proof that it was subsisting at the time of the action brought.
The affidavit in this ease merely affirms that the deponent, agent of the plaintiff, is informed and believes that *204 the defendant is indebted to the plaintiff; and, in ascertaining the sum, excludes a credit on the instrument made by another agent, because unjust, as deponent is informed and believes. It does not explain the nature or duration of the. deponent’s agency, nor state any circumstance to give weight to his belief of the defendant’s indebtedness. No acknowledgment of the debt by the defendant is stated, nor even that the instrument copied is signed by the defendant ; it does not appear, from any statement in the affidavit, nor by any proof accompanying it, whether the plaintiff was in the State or abroad, to explain the necessity of the deponent’s agency, and excuse the affidavit of the plaintiff himself. The deponent only affirms that he is informed and believes, that is, believes only on information, that the defendant is indebted to the plaintiff. Who was the deponent’s informant; what his character, interest, or means of knowledge, does not appear. If it were the defendant, the statement would have been of a confession or acknowledgment. It may have been the plaintiff, who may have employed an agent, to evade the consequences of perjury in procuring a malicious arrest. Nor is it shewn how long the information was received before the affidavit was made. In the interval, the debt may have been “ discharged, for any thing this person knows.” The affidavit makes no direct, positive statement, nor presents a single fact in support of the deponent’s belief of indebtedness. It is altogether inconclusive, and the oath superfluous. No assignment of perjury can be made or proved; for it could not be shewn the deponent had not been informed by any person, and no proof can negative his statement of belief.
The requirement that the affidavit shall contain a positive and direct statement of a subsisting debt, is most reasonable and proper. The subjection of a party to arrest and imprisonment, on process for the recovery of a pecuniary demand, confers on the creditor a large and dangerous power. The exercise of it should not be permitted without restraint or responsibility. The least restraint should be a direct and positive affidavit of a subsisting debt; and the least responsibility should be a *205 liability to indictment for perjury in case of its abuse. These are no impracticable1 or difficult conditions to the creditor; they are the least a citizen may demand for the security of his personal liberty. The objection is that, in some cases, such an affidavit cannot be procured. The effect of the decision is to dispense with such an affidavit in all cases. The result is, that to remedy the inconvenience which may sometimes be experienced for want of the necessary proof, it is dispensed with altogether, and the security of personal liberty is surrendered to the ácci-dental exigencies of credit.
A brief review of the history of arrest for civil injuries will enforce tlié necessity of vigilance against its abuse, as well by the example of the ancient jealousy of the common law for personal liberty, as b.y the experience of the mischiefs and oppressions which followed a relaxation of the security on which it was at first allowed.
At common law, the person of a defendant was not subject to arrest for injuries unaccompanied by force; nor even for injuries accompanied by force, by a capias ad respondendum, without security given by the plaintiff to prosecute his suit with effect. The capias must have been founded on an original writ. This was sued out of Chancery; of which there were two forms, designated a praecipe and si fecerit te securum. In both, the command to the sheriff to proceed against the defendant was provisional, “if the plaintiff shall give'security of prosecuting his claim.” 3 Bl. Com. App. 2, sect. 1, and App. 3, sect. 1. For injuries unaccompanied with force, by either of these forms the sheriff might enforce the appearance of the defendant, by a distringas of his goods and of the profits of his lands. Here the process in such cases ended ; the defendant, if he had any substance, being stripped of it; and if he had none, it was deemed useless to pursue him further. But in cases of injury with force, if the distringas proved ineffectual to coerce the appearance of the defendant, a capias issued to arrest and imprison his person. . This process was first extended to actions of account by the statute 52 H. 3, c. 23, P. L. 27; and to debt and detinue by 25. Ed. 3, c. 17, P. L. 34; and to all *206 actions on the case by 19 H. 7, c. 9, P. L. 44. In the mean time, the substantial securities anciently required for the suing out of the original writ were disused, and for them were substituted the imaginary persons of John Doe and Richard Roe ; and the amercement of a plaintiff for a false clamor remains only a curious form in modern judgments. By the practice of the courts, the defendant having been arrested on the allegation in the capias of an injury vi et armis, the plaintiff was permitted to prosecute for any less forcible injury. The mischiefs of this practice are forcibly presented in the statute 13 Car. 2, c. 2, P. L. 76. The Act is entitled “ for the prevention of vexations and oppressions by arrests,” (fee. and recites the great complaint of the realm that “ many good subjects have been arrested on general writs of capias not expressing any particular or certain cause of action, and thereupon kept prisoners for a long time for want of bail, though, in truth, there has been little or no cause of action ; and that those arrests were many times procured by malicious persons to vex and oppress defendants, or to force from them unjust compositions for obtaining their liberty; and by such practises men were daily undone and destroyed in their estates, without possibility of having reparation, the actors employed in such practises having been (for the most part) poor and lurking persons, and their actings so secret it had been found very difficult to make discovery and proof thereof.” For remedy of which growing evils and mischiefs, it is enacted that no person arrested by force of any bailable writ, wherein “ the certainty and true cause of action is not expressed particularly,” shall be compelled to give security for his appearance, in any penalty or sum exceeding £40. But the statute proved ineffectual for the prevention of vexations and oppressions, since a malicious person might still have issued a capias, expressing particularly a specific cause of action, for any amount, which might be altogether fictitious, and elude the provisions of the statute and liability for a malicious arrest, by the employment of “ poor and lurking persons.” This great defect in the process of the law continued in the English courts until the enactments of 12 Geo. 1, c. *207 29, and 5 Geo. 2, c. 27. Before the making- of these statutes, a defendant might have been arrested in civil actions for any sum of money, however trifling, and to any amount however considerable, without any affidavit of its being due; 1 Tidd Pr. 164. By the latter of these statutes it is provided that in all cases where the plaintiff’s cause of action shall amount to ten pounds or upwards, an affidavit shall be made and filed of such cause of action, and the sum specified in such affidavit shall be indorsed on the back of the writ; for which sum the sheriff shall take bail, and no more.’
The Act of Assembly of 1769, P. L. 268, for establishing courts, recites, among other subjects for amendment in the law, “ that defendants may be often harrassed by being obliged, as they now are, to give bail whenever personally arrested, though there be really little or nothing due to the plaintiffs in the actions, and the same may be groundless,” and enacts that, “no person (except transient persons) shall héreafter be held to bail, for any sum less than fifty pounds current money, and no person shall be held to bail on any writ of capias ad respondendum, for debt, unless an affidavit shall be made before, and attested by, some judge or justice of the peace, and indorsed on, or annexed to, the writ, before the service thereof, of the sum really due,” <fec.
Thus, after long experience of the mischiefs which followed the disuse of the common law security against groundless and malicious arrests, the Act 1769 designed to prevent them, by requiring the verification by affidavit of the sum really due to the plaintiff, before the defendant should be arrested. It is worthy of observation, how, with the increase of wealth and the extension of credit, the jealousy for personal liberty has abated and its defences been impaired and reduced. Instead of the substantial guaranties for the effectual prosecution of his claim, required of the plaintiff at common law, before he might, by an arrest of the defendant’s person, or even by a distress' of his goods, coerce him to appear and answer the plaintiff’s demand, an affidavit of any irresponsible person, it may be of the plaintiff himself, is deemed suffi *208 cient. The reflection is not directed against the Act of 1769 as inadequate to its design. In past experience, no serious grievance has been manifested. But the security provided can only be maintained by a strict enforcement, in substance and effect, of the proof the Act requires. If the plaintiff be not required to furnish satisfactory proof of the alleged debt, in the full, certain and explicit statement of facts from which the indebtedness may appear to the court, and that not only by a person credible, but also attesting from the personal knowledge the rules of evidence require, the security is dissipated. A cardinal principle of evidence requires the.greatest degree of certainty of which the fact to be proved admits. Hearsay information and belief of a fact capable of positive and direct proof, are clearly inad- « missible. An affidavit is ex parte proof. As proof, it is subject to the rules of evidence. A person who has been convicted of perjury or other infamous crime, is not competent to make an affidavit. “ An affidavit must set forth the matter positively, and all material circumstances attending it, that the court may judge whether the deponent’s conclusions be just or not.” It should be so clear and positive that an indictment for perjury may be maintained on it. Bac. Abr. Tit. Affidavit.
The highest necessity enforces the observance of the rules of evidence, and of the requisites of an affidavit, when it is made to procure bailable process. If, as in this case, the agency of the person who makes the affidavit' does not appear, except in the designation appended to his signature, which agency, for ' any thing apparent to the court, may be, by the deponent, limited to the act of deposition ; who does not disclose the nature, extent or duration of his agency, while he swears off the acknowledged act of another agent in the receipt of property as a credit on the bond; who does not state a single fact in support of the charge of indebtedness by the defendant to the plaintiff, but affirms it altogether on his information and belief without the slightest reference to the sources of his information, by which the justice of his conclusions may be tried, and the assertion of his belief be extricated from the doubt the whole statement suggests, whether it is the *209 result of a simple credulity, or of a vicious promptness to credit and affirm whatever may be necessary to the case; •whose affidavit may he true in the whole extent of its vague and credulous statement, and yet the defendant not owe the plaintiff any thing;, and may be altogether untrue, and yet be attended with no criminal responsibility — to permit an arrest on such an “ affidavit of the sum really due to the plaintiff,” is a mockery of the security the statute professes to afford.
Wardlaw, J. concurred.